# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Jonathan Berall, M.D., M.P.H.,

               Plaintiff,

    *v.*

Teleflex Medical Inc.,

               Defendant.

Civ. No. 10-cv-5777-LAP-DCF

**SECOND AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Jonathan Berall, M.D., M.P.H. ("Dr. Berall"), for his Second Amended Complaint against defendant Teleflex Medical Incorporated ("Defendant"), avers as follows:

## NATURE OF THIS LAWSUIT

1. This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 271 and 281–285. This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2. The present Second Amended Complaint amends the First Amended Complaint (Dkt. 193), which was filed on November 12, 2020, (*see* Dkt. 193) and the Original Complaint in this Action (Dkt. 1), which was filed on July 30, 2010.

## PARTIES

3. Plaintiff Dr. Berall is an individual residing at 173 Columbia Heights, Brooklyn, NY 11201.

4. On information and belief, defendant Teleflex Medical Incorporated ("Teleflex") is a California corporation having its principal place of business at 3015 Carrington Mill Boulevard, Morrisville, NC 27560.

5.      On information and belief, former defendant LMA North America, Inc. ("LMA") was a Nevada corporation having its principal place of business at 4660 La Jolla Village Drive, Suite 900, San Diego, CA 92122.  On December 31, 2013, LMA merged with and into Teleflex Medical Incorporated.  *See* Dkt. 213 ¶ 9.  On January 19, 2021, Defendant Teleflex was substituted for LMA.  *See* Dkt. 234.

6.      On information and belief, former defendant Aircraft Medical, Ltd. ("Aircraft") was a United Kingdom corporation having its principal place of business at 9-10 St. Andrews Square, Edinburgh, EH2 2AF, United Kingdom.  Aircraft was dismissed with prejudice on August 26, 2019.  *See* Dkt. 128.

## JURISDICTION AND VENUE

7.      This Court has personal jurisdiction over Teleflex at least because Teleflex (including its predecessor LMA) sold, offered for sale, or imported infringing McGrath Series 5 and Airtraq video laryngoscopes into this District, or caused the same to occur through its affiliates or contractors.

8.      Neither Teleflex nor its predecessor LMA raised any objection to personal jurisdiction in the over 11 years that this Action was pending.  In its answer to the Original Complaint, LMA admitted that this Court has personal jurisdiction over LMA.  *See* Dkt. 48 ¶ 9.  In its answer to the FAC, LMA stated that it would not contest personal jurisdiction for the purposes of this action.  *See* Dkt. 213 ¶ 10.  Accordingly, Teleflex has waived any objection to personal jurisdiction.

9.      Venue is proper in this district at least because, on information and belief, as of the time this action was filed on July 30, 2010, LMA maintained a regular and established place of business within this District, which would be revealed through discovery.

2

10.     Neither Teleflex nor its predecessor LMA previously raised any objection to venue in any answer or motion to dismiss.  In its answer to the Original Complaint, LMA did not raise any objection to venue.  *See* Dkt. 48 ¶ 10.  In its answer to the FAC, LMA consented to venue in this District for the purposes of this Action.  *See* Dkt. 213 ¶ 11.  Teleflex additionally filed a motion for summary judgment, without raising an objection to venue therein.  *See* Dkts. 255 & 257.

11.     According to Fed. R. Civ. P. 12(h)(1), by failing to raise an objection to venue, Teleflex has waived any challenge to venue in this District for the purpose of this Action.

## FACTS

12.     Dr. Berall is the owner of all right, title and interest in United States Patent No. 5,827,178 ("the '178 Patent" or "the Berall Patent"), titled "Laryngoscope for Use in Trachea Intubation," issued by the United States Patent and Trademark Office ("USPTO") on October 27, 1998, a copy of which is attached as Exhibit 1.  The USPTO issued a reexamination certification for the Berall Patent on July 16, 2019, a copy of which is attached as Exhibit 2.

13.     Aircraft marketed, produced, distributed, sold, and/or offered to sell in the United States and/or imported into the United States video laryngoscopes, including, for example, the McGrath Series 5 video laryngoscope.

14.     LMA has distributed video laryngoscopes within the United States since at least 2006, including, by way of example, the McGrath Series 5 video laryngoscope.

15.     From about 2006 to 2010, LMA was the exclusive United States distributor for Aircraft's video laryngoscopes, including, for example, the McGrath Series 5 video laryngoscope, and components thereof.  *See* Dkt. 213 ¶ 31; Ex. 3; Ex 4.  LMA (and after the merger, Teleflex) marketed, distributed, sold, and/or offered to sell in the United States and/or imported Aircraft

3

video laryngoscopes, including, for example, the McGrath Series 5 video laryngoscope, and components thereof.

16.     On information and belief, Teleflex was the exclusive United States distributor for Airtraq video laryngoscopes starting in 2015.  *See* Ex. 5.

17.     On information and belief, the Airtraq video laryngoscopes and its components are designed and/or manufactured by Prodol Meditec, S.A., and/or its affiliates.

18.     On information and belief, Teleflex marketed, distributed, sold, and/or offered to sell in the United States and/or imported video laryngoscopes, including by way of non-limiting example, McGrath Series 5 video laryngoscopes, Airtraq video laryngoscopes, and components thereof.

19.     Dr. Berall initially brought this Action alleging infringement of the '178 Patent by filing the Original Complaint on July 30, 2010.  *See* Dkt. 1.

20.     The Original Complaint alleged that LMA infringed the '178 Patent for its activities related to video laryngoscopes, including by way of example the McGrath Series 5 video laryngoscope.  *See* Dkt. 1 ¶¶ 16, 34–36.

21.     The Original Complaint alleged that AirTraq LLC infringed the '178 Patent for its activities related to AirTraq-branded laryngoscopes.  *See* Dkt. 1 ¶¶ 17, 37–40.  The allegations against AirTraq LLC were dismissed without prejudice on Nov. 3, 2010.  *See* Dkt. 38.

22.     On October 29, 2010, former defendant Verathon Inc. filed Ex Parte Reexamination Request No. 90/011,308 with the United States Patent and Trademark Office ("USPTO") regarding the '178 Patent.  On December 10, 2010, former defendant Hoya Corporation filed Ex Parte Reexamination Request No. 90/011,383 regarding the '178 Patent.  On June 6, 2012, former

defendant Hoya Corporation filed Ex Parte Reexamination Request No. 90/012,340 regarding the '178 Patent.

23.    On May 11, 2011, this Action was stayed pending the resolution of the reexaminations of the '178 Patent by the USPTO. *See* Dkt. 78.

24.    On July 16, 2019, after an comprehensive reexamination process lasting nearly 9 years, the USPTO issued an Ex Parte Reexamination Certificate for the '178 Patent, with respect to Reexamination Requests Nos. 90/011,380, 90/011,383, and 90/012,340, confirming the patentability of claims 1–15, and cancelling claim 16. *See* Ex. 2.  The parties notified the Court of the Ex Parte Reexamination Certificate on July 30 and July 31, 2019. *See* Dkt. 124; Dkt. 125.

25.    On November 4, 2019, the case was referred to the Court-annexed Mediation Program, and the stay remained in place during the duration of the mediation. *See* Dkt. 139.

26.    LMA informed the Court on November 6, 2020, that it sought to engage in further mediation discussions with Dr. Berall and asked that the stay be maintained.  Dkt. 189 at 3.

27.    On November 12, 2020, Dr. Berall filed his First Amended Complaint ("FAC"), after the stay was lifted as to former defendant Pentax. *See* Dkt. 193.

28.    The FAC did not amend Dr. Berall's allegations as to LMA.  As the FAC noted, at that time, the stay remained in place as to LMA.  FAC ¶ 39.  The FAC further stated that "[a]ccordingly, the present amended complaint does not amend Dr. Berall's allegations with regards to the other remaining defendants, although Dr. Berall reserves his right to do [so] should the stay be lifted as to those defendants." *Id.*

29.    On November 30, 2020, the parties informed the Court that mediation discussions between Dr. Berall and LMA have concluded without resolution of the matter. *See* Dkt. 206.  Dr.

Berall requested that the stay be lifted with respect to LMA, so that Dr. Berall may proceed with litigation as to LMA.

30.     On December 1, 2020, the Court lifted the stay with respect to Dr. Berall's claims against LMA.  *See* Dkt. 207.

31.     On January 11, 2021, Dr. Berall submitted a letter brief to the Court seeking substitution of Teleflex Medical Inc. for LMA.  Dkt. 222.  In his brief, Dr. Berall noted that "Dr. Berall has patent-infringement claims against Teleflex both for the pre-merger laryngoscope sales by LMA, as well as the post-merger laryngoscope sales by Teleflex." *Id*. at 3.  Dr. Berall further indicated that "Teleflex would not be unfairly prejudiced by substitution or by Dr. Berall's allegations of infringement against the AirTraq scopes." *Id*.

32.     Having considered these arguments, on January 19, 2021, the Court substituted Teleflex Medical Inc. in place of the now-defunct LMA North America, Inc.  *See* Dkt. 234.

33.     On November 1, 2021, the Court granted leave to file the present Second Amended Complaint.  Dkt. 350.

## BACKGROUND REGARDING LARYNGOSCOPES

34.     A laryngoscope is a vital, life-saving tool used by paramedics and physicians in countless settings—operating rooms, pre-hospital locales, emergency rooms, intensive care units, and general hospital wards—to hold open a patient's airway, so that the physician may be able to look into a patient's trachea and insert a tube that provides oxygen to the non-breathing patient (referred to as "intubation").

35.     The overwhelming majority of general anesthesia operations use intubation. Moreover, intubation is necessary in countless emergency situations, including the treatment of

6

the current COVID pandemic, and of victims of traumatic violence, whether on the streets or on the battlefield.

36.     Intubation is often difficult and can give rise to complications.  The speed and accuracy of intubation is absolutely critical:  even a short period of oxygen deprivation can result in death or severe brain damage of the patient.

37.     Intubation of severely compromised patients has many challenges.  For example, the tongue of the unconscious patient often slips over the laryngoscope and obstructs the physician's view of the tracheal opening.

38.     Vomiting, blood, abscesses, cancers, congenital abnormalities, and spasms may all obstruct the view of the trachea, leading to failure of intubation—and death.

## DR. BERALL'S U.S. PATENT NO. 5,827,178

39.     Dr. Berall is a physician with over 40 years of experience, who has practiced emergency medicine throughout the world, in some of the most severe humanitarian emergencies.

40.     Dr. Berall has served in the emergency rooms and internal medicine clinics of dozens of hospitals in New York and throughout the country, treating countless patients.

41.     Having performed hundreds of intubations, Dr. Berall was aware of the challenges faced in intubation, and the lack of adequate tools to provide fast and accurate intubation in what is often an emergency scenario.

42.      For example, although devices existed for inserting a camera into a patient's airway, they had critical flaws.  Most prominently, when using a camera on the end of an intubation device (*e.g.*, an endotracheal tube or stylet), anatomical structures, such as the tongue, often obstructed the physician's view.

7

43. Dr. Berall had the key insight that by placing the camera in the vicinity of the distal end (*i.e.*, the one furthest from the operator) of the laryngoscope, the physician would have the most stable and unobstructed view of the patient's trachea.

44. Dr. Berall disclosed a novel and inventive laryngoscope that incorporated his insights to the USPTO in a patent application filed January 2, 1997.

45. On October 27, 1998, after recognizing the utility and novelty of Dr. Berall's invention, the USPTO awarded to Dr. Berall U.S. Patent No. 5,827,178. *See* Ex. 1.

## THE MCGRATH VIDEO LARYNGOSCOPE

46. The following annotated figure is a true and accurate depiction of the McGrath Series 5 ("McGrath") and the Airtraq video laryngoscopes, two exemplary laryngoscopes sold by Teleflex (including its predecessor LMA).



47.     The McGrath video laryngoscope is a laryngoscope that includes a handle, a blade, a camera, and a display. The blade of the McGrath has a proximal end connected to the handle and a distal end that projects laterally from the handle.

48.     More specifically, the McGrath video laryngoscope includes a Handle Module, which includes a handle to be grasped by the operator, a battery power supply, and an attached display screen.

49.     The McGrath video laryngoscope additionally includes a CameraStick Module, which is attached to the handle, and extends and projects laterally from the handle. The CameraStick Module has a proximal end (*i.e.*, the end connected to the handle, and therefore nearest or most proximate to the handle) and a distal end (*i.e.*, the end furthest or most distant from the handle). The CameraStick Module constitutes a blade, and contains a camera and light source mounted on the CameraStick Module in the vicinity of its distal end. *See* Ex. 6 at 2, 4.

50.     The McGrath video laryngoscope additionally includes disposable sterile blade covers, which slide over the CameraStick, forming part of the blade, and cover the camera and light assembly during use. *See* Ex. 6 at 2. Once the disposable blade has been placed over the CameraStick, it is securely mounted in place, and the combination of CameraStick and disposable blade cover together also function as and constitute a blade. The camera is thus in the vicinity of the distal end of the blade, suitable for visualizing the patient's trachea and other oral structures.

51.     As shown in the figure above, the McGrath video laryngoscope's camera is mounted on the blade. The McGrath video laryngoscope's camera is located in the vicinity of the blade's distal end. The function of the McGrath video laryngoscope's camera is to observe a visual field.

52.     The McGrath Handle Module includes a display that displays the image observed by the camera (that is, the field of view) at a preselected location, where the color LCD screen is mounted on the handle.  *See* Ex. 6 at 2, 3.  In order to display the field of view of the camera, the McGrath's display is operatively connected to the McGrath's camera.

53.     The McGrath video laryngoscope is designed for use with an instrument for intubating a trachea of a patient, such as an endotracheal tube or stylet.  *See* Ex. 6 at 2, 10.


### THE AIRTRAQ VIDEO LARYNGOSCOPE

54.     The Airtraq suite of products, including at least the Airtraq Avant and Airtraq SP, are laryngoscopes that include a handle, a blade, a camera, and a display.  The blade of the Airtraq Avant and Airtraq SP has a proximal end connected to the handle and a distal end that projects laterally from the handle.

55.     More specifically, the Airtraq SP video laryngoscope shown in the figure below from Teleflex's website includes a handle to be grasped by the operator, a battery power supply, a blade (collectively, the "Airtraq SP Handle Module") and the "Airtraq WiFi Camera Module," which includes a display screen:



Ex. 7.

56. The blade of the Airtraq SP video laryngoscope extends over the camera optics and light assembly during use.

57. The Airtraq SP video laryngoscope as shown in the figures above (*see* ¶¶ 43, 52), has the camera is mounted on the blade in the vicinity of the distal end of the blade. The function of the Airtraq SP laryngoscope's camera is to observe a visual field.

58. The Airtraq SP video laryngoscope as shown in the figures above (*see* ¶¶ 43, 52), includes the Airtraq WiFi Camera Module, which displays the image observed by the camera via a color screen mounted on the handle. This display allows an intubator to see the visual field observed by the camera at a preselected location. In order to display the field of view of the camera, the Airtraq SP's display is operatively connected to the Airtraq SP's camera.

59. The Airtraq SP video laryngoscope is also for use with an instrument for intubating a trachea of a patient. As seen in the picture above, the Airtraq SP includes a guiding channel for a tracheal endoscopy tube. The structure of the Airtraq SP is such that an intubator may hold the Airtraq SP handle in one hand, and manipulate the tracheal tube with the other.

60. The Airtraq Avant shown in the annotated figure below from Teleflex's website includes a handle to be grasped by the operator, a battery power supply, and the "Airtraq WiFi Camera Module" described above, which includes a display screen. The Airtraq Avant comprises an Airtraq Avant Optics Module that contains the optical, anti-fog and electronic systems, including a battery. The Airtraq Avant further comprises a disposable plastic blade, which is placed over the Airtraq Avant Optics Module, and which covers the camera and light assembly during use. *See* Ex. 8. The Airtraq Avant has a blade with a proximal end connected to the handle and a distal end projecting laterally therefrom, as can be seen in the annotated image below.



Ex. 9 (annotated).

61.     As shown in the figure above, the Airtraq Avant video laryngoscope's camera is mounted on the blade in the vicinity of the distal end of the blade.  The function of the Airtraq Avant's laryngoscope's camera is to observe a visual field.  In order to display the field of view of the camera, the Airtraq SP's display is operatively connected to the Airtraq SP's camera.

62.     The Airtraq Avant video laryngoscope shown in the annotated image above from Teleflex's website includes the Airtraq WiFi Camera Module, which displays the image observed by the camera via a color screen mounted on the handle.  This display allows an intubator to see the visual field observed by the camera at a preselected location.

63.     The Airtraq Avant video laryngoscope is also for use with an instrument for intubating a trachea of a patient, such as an endotracheal tube or stylet.  As seen in the picture above, the Airtraq Avant includes a guiding channel for a tracheal endoscopy tube.  The structure of the Airtraq Avant is such that an intubator may hold the Airtraq Avant handle in one hand, and manipulate the tracheal tube with the other.

12

## TELEFLEX'S KNOWLEDGE OF THE '178 PATENT

64.     On information and belief, Teleflex (including its predecessor LMA) had knowledge of the '178 Patent and the fact that its video laryngoscopes, including for example McGrath and Airtraq video laryngoscopes, infringed.

65.     LMA had knowledge of the '178 Patent, and notice of its infringement thereof by the McGrath video laryngoscopes, at least as of the service of the Original Complaint.  Dkt. 1 ¶¶ 34–36.  Summons was served on an agent of LMA on August 4, 2010.  *See* Dkt. 5.  LMA filed an answer to the Original Complaint on November 16, 2010.  *See* Dkt. 48.

66.     LMA had notice of allegations of Aircraft's infringement of the '178 Patent by the McGrath laryngoscopes, at least as of the service of the Original Complaint.  Dkt. 1 ¶¶ 30–33.

67.     LMA had notice of allegations of Airtraq's infringement of the '178 Patent by the Airtraq laryngoscopes, at least as of the service of the Original Complaint.  Dkt. 1 ¶¶ 37–40.

68.     For example, when Teleflex was engaging in its due diligence prior to the acquisition of LMA, LMA would have informed Teleflex, or Teleflex would have learned through its own investigation, that the McGrath laryngoscopes were subjects of this present lawsuit, and were accused of infringement of the '178 Patent.

69.     As an additional example, when Teleflex was engaging in its due diligence prior to the acquisition of LMA, LMA would have informed Teleflex, or Teleflex would have learned through its own investigation, that the Airtraq laryngoscopes had been subjects of this lawsuit, were accused of infringing, and were dismissed without prejudice, such that Berall could refile his allegations.  Accordingly, Teleflex would have known that the Airtraq laryngoscopes were accused of infringing the '178 Patent, and was put on notice that Berall reserved the right to refile allegations of infringement against the Airtraq laryngoscopes.

13

70. For at least the foregoing reasons, Teleflex had actual notice of the Original Complaint and of the '178 Patent, and had knowledge of Dr. Berall's allegations in the Original Complaint that the McGrath and Airtraq products infringed the '178 Patent, no later than December 2013.

71. LMA had notice of the '178 Patent and infringement by the McGrath video laryngoscope prior to the filing of the Original Complaint.

72. For example, prior to filing the Original Complaint, LMA was informed of the '178 Patent through a notice letter sent by Dr. Berall's attorney, Charles Baxley, dated March 15, 2007, to LMA at its address at 4660 La Jolla Village Drive, Suite 900, San Diego, CA 92122. Ex. 10. Mr. Baxley's letter identified the '178 Patent (which was attached to the letter), and indicated that the McGrath video laryngoscope practiced the '178 Patent. Mr. Baxley's letter indicated Dr. Berall's interest in discussing the possibility of granting LMA a license to the '178 Patent. For at least this reason, LMA had notice of the '178 Patent and infringement by the McGrath video laryngoscope upon receipt of Mr. Baxley's letter.

73. As a second example, prior to filing the Original Complaint, LMA was informed of the '178 Patent as a result of a February 23, 2010, office action during prosecution of U.S. Patent App. No. 11/578,689 (the "'689 Application"). The inventor of the '689 Application was Dr. Archibald Brain. Ex. 11. On information and belief, Dr. Brain was the founder of LMA. The '689 Application was assigned to Laryngeal Mask Co. Ltd. Ex. 11. The patent examiner cited the '178 Patent in the Office Action dated February 23, 2010. Ex. 12 at 8.

74. Laryngeal Mask Co. Ltd. was an international affiliate of LMA, and was acquired by Teleflex Medical at approximately the same time that Teleflex acquired LMA. On information and belief, "LMA" stands for "laryngeal mask airway," which was a product designed and

manufactured by the Laryngeal Mask Co. Ltd. On information and belief, LMA North America, Inc. was established for the purpose of distributing in the United States the laryngeal mask product designed and manufactured by the Laryngeal Mask Co. Ltd.

75. On information and belief, Dr. Brain and the Laryngeal Mask Company would have recognized that the McGrath video laryngoscopes distributed by their affiliate LMA practiced the '178 Patent. On information and belief, Dr. Brain and/or the Laryngeal Mask Co. Ltd. would have informed its affiliate LMA of the '178 Patent and its infringement, to warn them of the potential of a lawsuit. For at least this reason, LMA had notice and knowledge of the '178 Patent shortly after receipt of the office action dated February 23, 2010.

76. As a third example, prior to filing the Original Complaint, Aircraft was informed of the '178 Patent through correspondence with Dr. Berall's attorney Mr. Baxley and discussions with Dr. Berall about licensing the '178 Patent. Dr. Berall had discussions with Aircraft (including its President, Matt McGrath, the developer of the McGrath video laryngoscope) as early as June 2006. Ex. 13. Accordingly, Aircraft had notice and knowledge of the '178 Patent and infringement by the McGrath video laryngoscope at least as early as June 2006.

77. On information and belief, Aircraft would have communicated information about the '178 Patent and the McGrath video laryngoscope with LMA, Aircraft's sole distributor of McGrath video laryngoscopes in the United States, to warn them of the potential of a lawsuit. Accordingly, on information and belief, LMA would have received knowledge of the '178 Patent and of the McGrath video laryngoscope's infringement, no later than shortly after.

78. To the extent that LMA/Teleflex argues that it did not have actual knowledge of the '178 Patent and its infringement thereof prior to the filing of the complaint, LMA/Teleflex was nonetheless willfully blind to its infringement of the '178 Patent, because it was aware of the high

15

probability that video laryngoscopes (including its McGrath Series 5 and Airtraq) were covered by patents, and it took deliberate actions to avoid learning of its infringement.

79.     For example, a medical-device manufacturer or distributor such as LMA/Teleflex would have known that there are a substantial number of patents in the medical device field, given the life-saving nature of, and thus high value of, innovations in the medical device field. LMA/Teleflex would further have known that a laryngoscope is a particularly life-critical medical device, and thus would be even more likely to be covered by patents.  Thus, LMA/Teleflex would have known that by selling a video laryngoscope in the United States, there was a high probability that said video laryngoscopes were covered by patents and therefore that there was a high probability its actions were infringing others' patents.

80.     Had LMA/Teleflex performed a reasonable investigation of potentially relevant patents in the field prior to beginning sales of video laryngoscopes, it would have discovered the '178 Patent during that investigation.  The '178 Patent has been publicly available since October 27, 1998, well before LMA/Teleflex began sales of video laryngoscopes.  The '178 Patent was well known in the field, having been cited in over 70 U.S. and foreign patents and applications, including those assigned to Aircraft.

81.     However, on information and belief, LMA/Teleflex did not perform any investigation prior to selling the McGrath or Airtraq video laryngoscopes into whether such video laryngoscopes potentially infringed upon any patent.

82.     On information and belief, LMA/Teleflex intentionally did not perform such an investigation in order to avoid discovering its infringement of patents, and therefore was willfully blind to its infringement, despite the high likelihood that such investigation would lead to discovery of patents covering LMA's products, including the '178 patent.

16

**COUNT I**
**(Infringement of the '178 Patent by Teleflex)**

83.     The allegations of the preceding paragraphs are hereby incorporated by reference.

84.     During the life of the '178 Patent, Teleflex has made, used, offered to sell, imported and/or sold within the United States (including in this District); actively induced others to make, use, offer to sell, and/or sell within the United States (including in this District); and contributed to the infringing use, sale, and/or offer for sale (including in this District) of products that practice the inventions of the '178 Patent, including video laryngoscopes, such as, for example, the McGrath and Airtraq video laryngoscopes.

85.     Teleflex has to date refused to provide discovery into any LMA or Teleflex product other than the McGrath video laryngoscopes.

86.     Accordingly, Berall does not have complete information as to the scope of Teleflex's infringement.   The McGrath and Airtraq video laryngoscopes are thus merely exemplary of Teleflex's infringement, and Dr. Berall reserves the right to accuse of infringement any other product sold by LMA or Teleflex during the life of the '178 Patent.

87.     As described above, the McGrath and Airtraq video laryngoscopes embody and thus infringe numerous claims of the '178 Patent, including at least independent claims 1 and 15, either literally or under the doctrine of equivalents.

88.     Because the McGrath and Airtraq video laryngoscopes embody apparatus claims of the '178 Patent, any use of the McGrath or Airtraq video laryngoscopes is an infringing use.

89.     The McGrath video laryngoscope was designed and manufactured by Aircraft Medical.  *See* Ex. 6 at 13, 15, 18.

90.    At least from 2006 to 2010, LMA had an agreement with Aircraft as the exclusive distributor of the McGrath video laryngoscope in the United States.

91.    LMA (and Teleflex after the merger) marketed, distributed, sold, and/or offered to sell in the United States and/or imported video laryngoscopes, such as McGrath video laryngoscopes, and components thereof.

92.    Teleflex (including its predecessor LMA) thus directly infringed the '178 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing video laryngoscopes, such as the McGrath video laryngoscope, in the United States during the life of the '178 Patent.

93.    At least since 2015, Teleflex marketed, distributed, sold, and/or offered to sell in the United States and/or imported video laryngoscopes, such as Airtraq video laryngoscopes, and components thereof. *See* Ex. 5.

94.    Teleflex thus directly infringed the '178 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale, and/or importing video laryngoscopes, including Airtraq video laryngoscopes, in the United States during the life of the '178 Patent.

95.    Teleflex (including its predecessor LMA) also directly infringed the '178 Patent by using infringing video laryngoscopes, such as McGrath and Airtraq video laryngoscopes, during the life of the '178 Patent.

96.    Teleflex (including its processor LMA) used the McGrath and Airtraq video laryngoscopes at trade shows, in advertisements, and as a part of its sales activities, in order to demonstrate the functionality of video laryngoscopes, such as the McGrath and Airtraq video laryngoscopes, and to solicit customers.

18

97.     As one example, LMA employee Michelle Suarez, LMA's Pre-Hospital Sales Manager, used a McGrath video laryngoscope at a trade show in 2010 to demonstrate intubation on a mannequin.  The demonstration was recorded and distributed online for marketing purposes.



Ex. 4.

98.     As an additional example, Teleflex used the Airtraq Avant video laryngoscope system in demonstrations at the conference EMS Today in February 2015 (*see* Ex. 5) and at the EMS World Expo Conference in September 2015 (*see* Ex. 14).  As another example, Teleflex hosted a procedural lab in November 2016, providing hands-on practice in which Teleflex used the Airtraq SP video laryngoscope to conduct demonstrations.  *See* Ex. 15.

99.     On information and belief, having been provided with knowledge of the '178 Patent, as discussed above, Teleflex (including its predecessor LMA) would have recognized the clear applicability of the '178 Patent to its McGrath and Airtraq video laryngoscope products, and would have recognized that its McGrath and Airtraq video laryngoscope products infringed.

100.    Notwithstanding its knowledge that it infringed, Teleflex (including its predecessor LMA) continued to directly infringe (as to video laryngoscopes, including both the McGrath and

the Airtraq) after learning of the '178 Patent and of its infringement (as to video laryngoscopes, including both the McGrath and the Airtraq). Accordingly, Teleflex's infringement was willful.

101. Teleflex (including its predecessor LMA) further actively induced infringement of the '178 Patent in violation of 35 U.S.C. § 271(b) by its customers to which it sold or otherwise provided video laryngoscopes, including McGrath or Airtraq video laryngoscopes, from Teleflex. For example, because the McGrath and Airtraq embody claims of the '178 Patent, any use of the McGrath or Airtraq video laryngoscopes by the customers of Teleflex is an infringing use.

102. Teleflex provided advertisements, videos, demonstrations, user manuals, or other materials to their customers encouraging the use of the McGrath or Airtraq video laryngoscopes for intubations.

103. Such materials have the intent and result of actively inducing their customers' infringement of the '178 Patent. And as discussed above, Teleflex had knowledge of the patent and of its infringement at the time it induced its customers' infringement.

104. Teleflex (including its predecessor LMA) contributed to its customers' infringement in violation of 35 U.S.C. § 271(c) by selling, offering for sale, and/or importing components of video laryngoscopes, for example the McGrath and Airtraq video laryngoscopes, which constituted a material part of the invention of the Berall Patent, and were especially made for use in an infringement of the Berall Patent, and are not otherwise staple articles or commodities of commerce suitable for substantial noninfringing use. And as discussed above, Teleflex had knowledge of the patent and of its infringement at the time it induced its customers' infringement.

105. Teleflex (including its predecessor LMA) sold components of video laryngoscopes, for example the McGrath video laryngoscope, both together and separately. For example, Teleflex

sold the McGrath disposable sterile blades separately from the McGrath Handle Module and CameraStick Module components.

106. Even after the merger of LMA into Teleflex, and after Teleflex ceased to sell entire McGrath video laryngoscopes, Teleflex continued to sell disposable sterile blades.

107. Teleflex (including its predecessor LMA) sold the Handle Module component and the CameraStick Module component separately from one another, for example, in the event that an existing customer needed to replace just one of the two components.

108. Each such component of the McGrath video laryngoscope is a material part of the invention of the '178 Patent and has no substantial noninfringing use.

109. As one example, the McGrath CameraStick Module is incapable of being used in connection with any other handle or display other than the McGrath Handle Module.

110. Thus, any use of the McGrath CameraStick Module is as part of the McGrath video laryngoscope.

111. As another example, the McGrath disposable sterile blades are incapable of being used with any device other than the McGrath CameraStick Module.

112. Thus, any use of the McGrath disposable sterile blades are as part of the McGrath video laryngoscope.

113. Teleflex sold components of video laryngoscopes, including the Airtraq SP and Airtraq Avant video laryngoscopes, separately.

114. For example, Teleflex sold the disposable sterile blades of the Airtraq Avant separately from the handle/blade and Airtraq WiFi Camera Module components.

115. As another example, Teleflex sold the Airtraq SP Handle Module separately from the Airtraq WiFi Camera Module.

116.    Teleflex sold these components separately from one another, for example, in the event that an existing customer needed to replace just one of the components.

117.    For example, Teleflex sells the "Airtraq WiFi Camera Module" separately, which includes a display screen, and it has no use other than to be used as a display as part of an Airtraq video laryngoscope.

118.    The Airtraq WiFi Camera Module is designed specifically for use with the Airtraq Avant and Airtraq SP.  The Airtraq WiFi Camera Module cannot be used as a display for any other laryngoscope, or on its own.

119.     The Airtraq WiFi Camera Module comprises a display, which is a material component of the invention of the '178 patent.  Thus, the Airtraq WiFi Camera Module has no substantial non-infringing uses.

120.    Teleflex encourages, promotes, and instructs users to use video laryngoscopes, including the Airtraq Avant and Airtraq SP video laryngoscopes with the Airtraq WiFi Camera Module.

121.    Teleflex published materials instructing use of video laryngoscopes, including the Airtraq SP and Avant with the Airtraq WiFi Camera Module for use as a video laryngoscope, and offered demonstrations of the Airtraq SP and Avant prior to expiry of the '178 patent.  Ex. 7; Ex. 9.

122.    Such actions by Teleflex had the intention and result of inducing users to infringe the '178 Patent by using the Airtraq video laryngoscopes, including with the Airtraq WiFi Camera Module.

123.     Teleflex's acts of infringement have caused damage to Dr. Berall, and Dr. Berall is entitled to recover from Teleflex the damages sustained by Dr. Berall as a result of Teleflex's wrongful acts.

124.     Pursuant to Federal Rule of Civil Procedure 15(c), the allegations of this Count against Teleflex relate back to July 30, 2010, the date on which the Original Complaint was filed.

125.     This Count arises out of the same conduct and occurrences that were set out in the Original Complaint against LMA, namely the sale of video laryngoscopes that infringe the '178 Patent.

126.     Moreover, Berall notified Teleflex in 2020, during the pendency of the stay, that Berall intended to assert that Teleflex's activities related to video laryngoscopes, including Airtraq video laryngoscopes, infringed the '178 Patent.  Accordingly, Teleflex had notice of the action, such that they will not be prejudiced in defending on the merits.

## JURY TRIAL DEMAND

127.     Pursuant to Rule 38, Fed. R. Civ. P., Dr. Berall demands a trial by jury on all issues set forth herein that are properly triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. Berall respectfully requests that the Court, to grant the following relief and to enter judgment in favor of Berall as follows:

A.     A judgment that Teleflex (including its predecessor LMA) has directly infringed, contributorily infringed and/or induced the infringement of the '178 Patent;

B.     Awarding Dr. Berall damages adequate to compensate for injuries sustained as a result of Teleflex's (including its predecessor LMA's) infringement of the '178

23

Patent, but in no event less than a reasonable royalty, together with pre-judgement and post-judgment interest thereon;

C.    A judgment that Teleflex (including its predecessor LMA) has willfully infringed the '178 Patent and awarding treble damages pursuant to 35 U.S.C. § 284;

D.    A judgment that this case is exceptional and an award of attorney fees and costs to Dr. Berall pursuant to 35 U.S.C. § 285; and

E.    Such other and further relief as the Court deems just and proper.

Dated: November 4, 2021                    Respectfully submitted,

                                           KIRKLAND & ELLIS LLP

                              By:    */s/ Ashley L.B. Ross*
                                     Ashley L.B. Ross
                                     Stefan M. Miller, Ph.D.
                                     Christopher DeCoro, Ph.D.
                                     Peter Evangelatos
                                     KIRKLAND & ELLIS LLP
                                     601 Lexington Ave.
                                     New York, NY 10022
                                     1-212-446-4954
                                     Ashley.Ross@kirkland.com
                                     Stefan.Miller@kirkland.com
                                     Christopher.DeCoro@kirkland.com
                                     Peter.Evangelatos@kirkland.com

                                     James Hurst, P.C.
                                     Marcus E. Sernel, P.C.
                                     Tasha Francis Gerasimow, Ph.D.
                                     KIRKLAND & ELLIS LLP
                                     300 North LaSalle
                                     Chicago, IL 60654
                                     1-312-862-5230
                                     James.Hurst@kirkland.com
                                     Marcus.Sernel@kirkland.com
                                     Tasha.Gerasimow@kirkland.com

                                     *Attorneys for Plaintiff Jonathan Berall M.D., M.P.H.*

24